UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND

CRIMINAL ACTION NO. 18-8-DLB-EBA

UNITED STATES OF AMERICA                                              PLAINTIFF

VS.            **ORDER ADOPTING REPORT AND RECOMMENDATION**

SHILO W. CANTRELL, et al.                                            DEFENDANTS

\*\* \*\* \*\* \*\* \*\* \*\* \*\* \*\* \*\*

This matter is before the Court upon the October 9, 2018 Report and Recommendation ("R&R") of United States Magistrate Judge Edward B. Atkins (Doc. # 33), wherein he recommends that the Court deny Defendant Lockwood's Motion to Suppress (Doc. # 27), and Defendants Cantrell's and Debarr's Motions for Joinder (Docs. # 30 and 31). Defendant Lockwood having filed Objections (Docs. # 38), Defendant Debarr having filed a Motion to Join Defendant Lockwood's Objections (Doc. # 40), Defendant Cantrell's time for filing objections having now expired, and the Government having responded to the Defendant's Objections (Doc. # 41), the R&R is now ripe for the Court's consideration. For the reasons that follow, Defendant Lockwood's Objections are **overruled**, Defendant Debarr's Motion to Join is **denied as moot**, the R&R is **adopted**, the Motion to Suppress is **denied**, and the Motions for Joinder are **denied**.

I.     **FACTUAL BACKGROUND**

On March 16, 2018, police in Morehead, Kentucky received a 911 call from an employee at the Days Inn in Morehead. (Docs. # 27 at 3 and 32-1 at 9). The employee claimed she had seen an "altercation" between a man and woman in which the man

1

pointed a gun at the woman. (Doc. # 27 at 3). The employee reported to the police that the man drove off in a black Lincoln Navigator ("black Lincoln") with an Ohio license plate. (Doc # 32-1 at 9).[1] The police report states that the caller was able to provide the police with the car's license plate number—HHT9297. *Id.* After receiving the call, Officer Joshua Ison of the Morehead City Police was on patrol and saw a black Lincoln that matched the description given to the police. (Docs. # 27 at 3 and 32-1 at 1). On the basis of the 911 call reporting the altercation, he attempted to pull over the vehicle; when he tried to do so Officer Ison claims the black Lincoln quickly sped up, made a reckless turn, and that someone in the back of the car appeared to be preparing to flee. (Doc. #32-1 at 9). When the car reached a dead end, someone left the car and attempted to run away. When the individual realized he had nowhere to go he returned to the car and, according to the police report, it "appeared that he was moving things around in the back seat." (Docs. # 27 at 3 and 32-1 at 9).

Officer Ison had all three occupants—Defendants Lockwood, Cantrell, and Debarr— get out of the car. (Doc. # 32-1 at 9). During the stop, Officer Ison frisked both Defendant Lockwood and Defendant Cantrell for weapons. *Id.* Neither were found to have weapons, but Defendant Lockwood was found with a large quantity of cash and Defendant Cantrell had a syringe on his person. *Id.* Both told Officer Ison that Defendant Cantrell had gotten into a fight with a prostitute at the Days Inn, but there was no weapon involved. *Id.* Officer Ison ultimately charged the driver, Defendant Lockwood, with reckless driving and arrested him. (Docs. # 27 at 3 and 32-1 at 9). Both of his passengers—Defendants Cantrell and Debarr—were arrested for public intoxication.

---

[1] Lockwood's Motion to Suppress suggests that the woman also got in the black Lincoln with the man. (Doc. # 27 at 3).

2

(Doc. # 27 at 3-4). Cantrell was also charged with fleeing evading or police. (Doc. # 32-1 at 1). During the stop, Officer Ison saw drug paraphernalia, including baggies, in plain view in the car. (Doc. # 27 at 4). Officer Ison sought consent to search the black Lincoln for a weapon, but Defendant Lockwood refused. (Doc. # 32-1 at 9). According to the police report, before Defendant Lockwood entered the jail following his arrest, he turned over "two baggies of crystal substance" which were in his pocket. *Id.*

Based on the crystal substance and cash in Defendant Lockwood's pocket, and the baggies in plain view, Officer Ison sought and obtained a Kentucky state search warrant to search the black Lincoln. (Docs. # 32-1 at 10 and 32-2). That search yielded pipes often used to smoke drugs, a loaded handgun, and multiple bags of a crystal substance in the car, as well as five cellphones, a computer, and two digital scales. (Doc. # 32-1 at 10). Some of the crystal substance was found behind the back seat and some was found in a McDonald's bag that Officer Ison found "[i]n the passenger side rear floorboard of the vehicle." *Id.* In his report, he described much of the crystal substance as appearing to "be pre-packaged for sale." *Id.* Nearly one pound of the substance, which was suspected to be methamphetamine, was obtained from the search of the black Lincoln. (Doc. # 32-3 at 2).

Officer Ison then sought and obtained a search warrant to search two rooms Mr. Lockwood had rented at the Days Inn. (Doc. # 32-1 at 1). The police had already visited the rooms conducting a welfare check for the woman Defendant Cantrell had admitted to having an altercation with. (Docs. # 32-3 at 2 and 32-1 at 9). When the police conducted the welfare check, "it was apparent that some drug activity had taken place" in the rooms. (Doc. # 32-3 at 2). This information, as well as the contents of the black Lincoln were

relied upon as probable cause to support the search warrant for Rooms 201 and 202, the rooms rented to Defendant Lockwood at the Days Inn in Morehead. (Doc. # 32-3). A Kentucky state judge signed off on the search warrants. (Docs. # 32-2 and 32-3). The search of Room 201 turned up "three syringes and a baggy containing a crystal substance." (Doc. # 32-1 at 10). Nothing was found in Room 202. *Id.*

## II. PROCEDURAL BACKGROUND

The Indictment in this case charges all three defendants with knowingly and intentionally possessing 50 grams or more or a mixture containing methamphetamine with the intent to distribute. (Doc. # 1). Defendant Cantrell is also charged with possession of a firearm in furtherance of a drug-trafficking crime, and possession of a firearm as a previously-convicted felon. *Id.*

On September 19, 2018, Defendant Lockwood filed a Motion to Suppress the evidence obtained from the search of the black Lincoln and the hotel rooms. (Doc. # 27). On September 24, 2018, Defendant Cantrell filed a Motion for Joinder of Defendant Lockwood's motion, (Doc. # 30), and on September 26, 2018 Defendant Debarr filed a similar motion to join Defendant Lockwood's motion. (Doc. # 31). The United States responded to the Motion to Suppress on September 27, 2018, (Doc. # 32), and Magistrate Judge Atkins issued his R&R on October 9, 2018. (Doc. # 33). Defendant Lockwood filed Objections (Doc. # 38), which Defendant Debarr has moved to join (Doc. # 40), and Defendant Cantrell's time for filing objections has now expired, *see* 28 U.S.C. § 636(b)(1)(c). The Government responded to the Defendant's Objections on November 2, 2018, (Doc. # 41), and Defendant Lockwood filed a reply to the Government's response on November 6, 2018. (Doc. # 42).

## III. ANALYSIS

### A. Standard of Review

A district judge may refer a motion to suppress, and other related motions, to a magistrate judge for the preparation of an R&R pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Criminal Procedure 59(b)(1). *See, e.g., United States v. Jones*, 6:16-cr-34, 2018 WL 2329780, at *1 (E.D. Ky. May 23, 2018) (adopting an R&R which dealt with both a motion to suppress and a motion for joinder to the motion to suppress). Parties have fourteen (14) days to object to a magistrate judge's R&R; failure to object to the R&R waives a party's right to review of the R&R. Fed. R. Crim. P. 59(b)(2). If objections are timely filed, the district court must review *de novo* the objected-to portions of the R&R. 28 U.S.C. § 636(b)(1)(C). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge . . . [or] may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

The purpose of objections is to allow "the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 (1985) (footnote omitted). Therefore, objections to the R&R must be specific—they may not be "vague, general, or conclusory . . . [as such objections are] tantamount to a complete failure to object." *Fields v. Lapeer 71-A District Court Clerk*, 2 F. App'x 481, 482-83 (6th Cir. 2001). "Moreover, 'an 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in

this context.'" *United States v. Vanover*, 2:10-cr-14, 2017 WL 1356328, at *1 (E.D. Ky. Apr. 11, 2017) (quoting *VanDiver v. Martin*, 304 F. Supp. 2d 934, 938 (E.D. Mich. 2004)).

A district court has the option, but is not required, to look at new arguments or evidence presented for the first time in objections to an R&R. *Muhammad v. Close*, 08-1944, 2009 WL 8755520, at * 2 (6th Cir. Apr. 20, 2009); *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000). The district court must exercise its discretion in determining whether new evidence should be considered, "rather than summarily accepting or denying" the new evidence. *Muhammad*, 2009 WL 8755520, at * 2 (quoting *Howell*, 231 F.3d at 621). This is the case because the "magistrate judge system was designed to alleviate the workload of district courts . . . [and] [t]o require a district court to consider evidence not previously presented to the magistrate would effectively nullify the magistrate judge's consideration of the matter and would not help to relieve the workload of the district court." *Howell*, 231 F.3d at 622 (citations omitted). "Systemic efficiencies would be frustrated and the magistrate judge's role reduced to that of a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round." *Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 991 (1st Cir. 1988). The reasoning behind *Howell* and *Muhammad* suggest that the district court must use its discretion in deciding whether new arguments should be considered "rather than summarily accepting or denying," when the arguments are first raised in objections to an R&R. *See Muhammad*, 2009 WL 8755520, at * 2; *Howell*, 231 F.3d at 621.

Lockwood has raised several objections to the Magistrate Judge's R&R.[2] (Doc. # 38). First, Lockwood objects to a finding of probable cause, based on the facts in the warrant and affidavit, for the search of his car and hotel room. *Id.* at 6. Second, Lockwood makes a number of factual objections and objects to the lack of an evidentiary hearing before Magistrate Judge Atkins. *Id.* at 1-3, 7-8. Third, Lockwood makes a number of new arguments regarding the legality of his stop and arrest, and the investigation underlying the affidavits. *Id.* at 1-2, 6. Fourth, Lockwood objects to Magistrate Judge Atkins's finding of a nexus of criminality. *Id.* at 3-4. Fifth, Lockwood objects to the Magistrate Judge's characterization of "baggies and scales as paraphernalia." *Id.* at 2. Lastly, Lockwood objects to the entering of an R&R that does not consider or rely on *United States v. Christian* (*Christian I*), 893 F.3d 846 (6th Cir. 2018), a recent Sixth Circuit case dealing with affidavits for search warrants. *Id.* at 5. The Court will address each of Lockwood's objections in turn.

B. **The search of Defendant Lockwood's car and hotel room was supported by probable cause.**

The Court first turns to Defendant Lockwood's objection that the search warrants were not supported by probable cause—an objection that underpins many of his other objections and arguments. As Magistrate Judge Atkins explained, the Fourth Amendment requires that warrants must be issued only "upon probable cause" and that searches and seizures must be reasonable. (Doc. # 33 at 2). Specifically, in order for a warrant to be issued, a neutral and detached magistrate must "make a practical, common-sense

---

[2] The Court has grouped and re-ordered the specific objections Defendant Lockwood made in order to analyze each in the most clear, efficient, and thorough way possible. The Court will not address Defendant Lockwood's objection to the introduction of information from the seized computers and cell phones as evidence at trial. (Doc. # 38 at 3). The government has not indicated an intention to introduce such evidence and, therefore, this objection is premature.

decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). It is "the duty of a reviewing court [ ] simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Id.* at 238-39 (quoting *Jones v. United States*, 362 U.S. 245, 271 (1960)).

Determining probable cause, however, is not a simple task as "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts— not readily, or even usefully, reduced to a neat set of legal rules." *Gates*, 462 U.S. at 232. In order to establish probable cause for a warrant to issue, the "affidavit must show a likelihood of two things: first that the items sought are 'seizable by virtue of being connected with criminal activity'; and second, 'that the items will be found in the place to be searched.'" *United States v. Church*, 823 F.3d 352, 355 (6th Cir. 2016) (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 557 n.6 (1978)). There is no formula, however, for what an affidavit should look like; "[n]ot all search warrant affidavits include the same ingredients. It is the mix that courts review to decide whether evidence may be used or must be suppressed . . . we consider the affidavit proper if, in its totality, it sufficiently demonstrates probable cause for that search warrant." *United States v. Hines*, 885 F.3d 919, 921-22 (6th Cir. 2018).

A Court's "review of the sufficiency of the evidence supporting probable cause is limited to the information presented in the four-corners of the affidavit." *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005). "Nevertheless, when considering that information, we look to the totality of the circumstances." *United States v. Dyer*, 580 F.3d

386, 390 (6th Cir. 2009). In doing so, the Court must examine the circumstances in a "realistic and commonsense fashion." *United States v. Van Shutters*, 163 F.3d 331, 336 (6th Cir. 1998) (quoting *United States v. Finch*, 998 F.2d 349, 352 (6th Cir. 1993)).

### 1. Search Warrant for the Black Lincoln

Regarding the warrant to search the car, there is sufficient evidence in the affidavit to support a finding of probable cause. While an individual generally has an expectation of privacy in their vehicle and its contents, "an individual's expectation of privacy in a vehicle and its contents may not survive if probable cause is given to believe that the vehicle is transporting contraband." *United States v. Ross*, 456 U.S. 798, 823 (1982).

The affidavit supporting the search warrant for the black Lincoln relies on three main facts—Lockwood was in possession of a large amount of cash, Lockwood had "some sort of crystal like substance" in his possession, and Officer Ison saw "multiple small baggies in plain view." (Doc. # 32-2 at 2). The Sixth Circuit has previously found an affidavit with similar evidence to support a finding of probable cause for a search warrant. *See United States v. Brooks*, 594 F.3d 488, 490-91, 493-95 (6th Cir. 2009) (finding marijuana seeds in plain view in a house, the smell of marijuana smoke, and a large sum of cash to be sufficient to find probable cause to issue a search warrant to search a residence). Here, the facts in the affidavit are similar to those in the *Brooks* affidavit. Officer Ison found paraphernalia in plain view in the car,[3] and Defendant Lockwood was in possession of a crystal-like substance and a large sum of cash. *Id.*; (Doc. # 32-2 at 2). The affidavit is more than sufficient to support probable cause to

---

[3] The photos provided by Defendant Lockwood do not contradict Officer Ison's assertion that multiple baggies were seen in a purse in plain view. (Doc. # 42-1 at 2). Additionally, Defendant Lockwood's late contest of these key factual issues is procedurally improper. *See* Part III.C. *infra*.

search the car, as the evidence presented suggests "a fair probability that contraband or evidence of a crime will be found" in the car. *Gates*, 462 U.S. at 238. Cantrell's attempted flight from the back of the car, while not sufficient alone to support a finding of probable cause, is another factor which bolsters the Court's probable cause determination. *United States v. Pope*, 561 F.2d 663, 669 (6th Cir. 1977).

### 2. Search Warrant for the Hotel Rooms

The facts presented in the affidavit for the warrant to search Defendant Lockwood's hotel rooms are also sufficient to support a finding of probable cause. The Sixth Circuit has previously found that it is reasonable to infer that a drug dealer or trafficker will store evidence of their dealing at home. *See United States v. Williams* 544 F.3d 683, 687 (6th Cir. 2008) (collecting cases). This inference can be extended to suspected drug dealer's hotel room as well, *United States v. Johnson*, No. 11-20551, 2012 WL 1231011, at *6 (E.D. Mich. Apr. 12, 2012) (finding probable cause to search a hotel room when evidence suggested a drug dealer was residing in a hotel, even when the affidavit "did not indicate any specific instances of criminality then occurring in the hotel room"), though "mere allegation that a specific defendant is a drug dealer, without more, is insufficient to tie alleged criminal activity to a particular abode." *United States v. Gasaway*, 3:07-cr-125, 2008 WL 2704565, at *14 (W.D. Ky. July 8, 2008). Additionally, probable cause to search a hotel room has previously been found based on plain view of drug paraphernalia alone. *United States v. Beasely*, 199 F. App'x 418, 423 (6th Cir. 2006) (finding probable cause to search a room because the police officer "was able to observe, in plain view, plastic baggies and marijuana shake, items that together provided at least probable cause to believe that illegal drugs were being repackaged in the room for possible resale").

Here, the affidavit provides more than just plain-view evidence of drug activity *or* evidence of a potential drug dealer's connection to the hotel room. Specifically, the affidavit reports that police saw evidence of drug activity in plain view in the hotel rooms during a welfare check, and states that a pound of suspected methamphetamine, "multiple small baggies," and a firearm were found in the black Lincoln that Defendant Lockwood had been driving. (Doc. # 32-3 at 2). It also reports that the driver of the black Lincoln, Defendant Lockwood, had both a "crystal like substance" and large quantity of cash on his person during the traffic stop, and that the rooms where the welfare check was conducted and evidence of drug activity was observed were registered in Defendant Lockwood's name. *Id.* The information provided within the four corners of the affidavit, and based on the totality of the circumstances of the stop and search of the Black Lincoln and the welfare check at the hotel room, creates "a fair probability that . . . evidence" of drug offenses would be found in the hotel rooms registered to Defendant Lockwood. *Gates*, 462 U.S at 238.

Moreover, even if the Court were to have found that either affidavit lacked the facts necessary to support probable cause for the searches, the good-faith exception would preclude suppression of the evidence found in the black Lincoln and hotel room. The good-faith exception exists to avoid suppression of evidence from a later-invalidated warrant that was relied on in good faith because "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." *United States v. Leon*, 468 U.S. 897, 922 (1984)*.*

There are four limitations on the application of the good-faith exception, *id.* at 923, but none of them apply here. There is no evidence that the "magistrate was misled by information in the affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth" or that the "magistrate wholly abandoned his judicial role;" therefore neither the first nor second limitation to the good-faith exception applies. *Id*. The affidavit is not "so bare bones as to preclude reasonable belief in the search warrant that the affidavit supported" because it does not "merely state[] suspicions, beliefs or conclusions;" rather, the affidavit includes particularized facts actually observed by Officer Ison and shows a "minimal nexus" between the hotel room and drug crimes and therefore does not qualify for the third limitation to the good-faith exception. *United States v. McPhearson*, 469 F.3d 518, 525-26 (6th Cir. 2006) (quoting *United States v. Weaver*, 99 F.3d 1327, 1378-81 (6th Cir. 1996) (declining to apply the good-faith exception when the affidavit only had boilerplate language with minimal additional facts and corroboration)). Finally, there were no facial deficiencies—like "failing to particularize the place to be searched or the things to be seized"—that would preclude an officer from reasonably presuming the warrant to be valid, so the fourth exception to the good-faith limitation does not apply. *Leon*, 468 U.S. at 923. Accordingly, the good-faith exception would preclude suppression of the evidence obtained as a result of each search even if the Court were to have found the affidavits to not establish probable cause.

This Court's conclusion is further supported by that fact that "the magistrate's determination of probable cause is afforded great deference, and that determination should be reversed only if the magistrate arbitrarily exercised his discretion." *United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004); *see also United States v. Allen*,

211 F.3d 970, 973 (6th Cir. 2000). The discussion *supra* makes clear that the issuing magistrate did not arbitrarily exercise discretion when finding probable cause to support each warrant, but rather was correct in finding probable cause to support each warrant. As the Court has found that each affidavit is sufficient to show probable cause for the warrants, Defendant Lockwood's Objections to Magistrate Judge Atkins's finding of probable cause are **overruled**.

> **C.    Lockwood's factual objections are improper at this stage of litigation and Magistrate Judge Atkins did not err in failing to hold a hearing.**

Defendant Lockwood's Motion to Suppress accepted the facts as stated in Officer Ison's police report and argued that the facts included in the affidavits to the search warrants were too general and vague to uphold a finding of probable cause and nexus of criminality to search the car and the hotel rooms. (Doc. # 27 at 3-7). At no point does Defendant Lockwood suggest that the facts in the affidavit were false or misleading. *Id.* at 7. No argument was made in the Motion to Suppress that suggested an evidentiary hearing was needed to determine what happened after the traffic stop and during Lockwood's arrest, nor were allegations made that Officer Ison lied in the affidavits supporting the warrants. *Id.* at 1-14. It was not until Defendant Lockwood submitted his Objections and his reply to the United States's response to his Objections, that he contested the facts as written in the police report and the affidavits. (Doc. # 38 at 7-8); *see also* (Doc. # 42).[4] Lockwood also objected to Magistrate Judge Atkins entering an R&R without first having an evidentiary hearing on the Motion to Suppress. *Id.*

---

[4]    Defendant Lockwood objects to the finding that he "immediately accelerated and made a reckless turn into a parking lot" and did not "dispute his reckless driving." (Doc. # 38 at 7-8). He also appears to be objecting to the fact that Officer Ison saw baggies in plain view. (Doc. # 42).

13

An evidentiary hearing on a motion to suppress is "required 'only if the motion is sufficiently definite, specific, detailed, and non-conjectural to enable the court to conclude that *contested issues of fact* going to the validity of the search are in question.'" *United States v. Abboud*, 438 F.3d 554, 577 (6th Cir. 2006) (quoting *United States v. Downs*, No. 96-3862, 1999 WL 130786, at *3 (6th Cir. Jan. 19, 1999)) (emphasis in original). Additionally, "[a] defendant is entitled to a hearing under *Franks v. Deleware*, 438 U.S. 154 (1978) if he (1) 'makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit,' and (2) 'the allegedly false statement is necessary for the finding of probable cause.'" *United States v. Green*, 572 F. App'x 438, 441 (6th Cir. 2014) (quoting *United States v. Graham*, 275 F.3d 490, 505 (6th Cir. 2001)) (footnote not included in original). This is a high bar for defendants to satisfy. *Id.* As Defendant Lockwood did not raise any contested issues of fact in his Motion to Suppress, nor did he suggest that a false statement was included in the warrant affidavit, *see* (Doc. # 27), Magistrate Judge Atkins did not err by not holding an evidentiary hearing or *Franks* hearing prior to issuing his R&R.

This Court has discretion to decide whether to consider Defendant Lockwood's new arguments contesting a number of facts, which were first raised in his objections to Magistrate Judge Atkins's R&R. *See* Part III.A. *supra*. The reasoning behind *Muhammad* and other similar cases convinces the Court to not consider Lockwood's arguments first raised in his Objections to the R&R. *Id.* Defendant Lockwood appears to be raising new factual issues, which could have been brought up in his initial Motion to Suppress. As such, Defendant Lockwood is using his Objections to get a second bite at the apple and

put new arguments before the Court in an attempt to have his Motion to Suppress granted. "[I]t [is] fundamentally unfair to permit a litigant to set its case in motion before the magistrate, wait to see which way the wind was blowing, and—having received an unfavorable recommendation—shift gears before the district judge." *Paterson-Leitch Co., Inc.*, 840 F.2d at 991. By reviewing the new factual objections Lockwood raises, the Court would be condoning Lockwood's approach, which defeats the purpose of the R&R process and frustrates judicial efficiency. Accordingly, the Court declines to consider Lockwood's new arguments, and Defendant Lockwood's factual objections and objection to the lack of hearing are **overruled**.

> **D.** **Lockwood's new legal arguments are improper at this stage of litigation.**

Defendant Lockwood also makes a number of new legal arguments in his Objections, including arguing the initial traffic stop was unlawful. *See* (Doc. # 38 at 6-7).[5] Similar to the factual objections discussed *supra*, these legal arguments could have been raised in Defendant Lockwood's Motion to Suppress. For the same reasons that Defendant Lockwood's new factual objections were overruled, objections based on these newly-raised legal arguments are similarly **overruled**. *See* Part III.C. *supra*.

---

[5] Defendant Lockwood argues "that the police had no probable cause to arrest Lockwood" and no probable cause to stop the black Lincoln. *See* (Doc. # 38 at 6-7). These are new legal arguments. Defendant Lockwood also "objects to the Magistrate's finding that there was a sufficient independent investigation before the officers submitted the affidavit in support of the search." *Id.* at 7. The Court construes this objection as a legal objection suggesting that the issuing magistrate judge was required to find that the police undertook a sufficient investigation before issuing the warrant. *Id.* This argument is legally meritless as a judge does not have to find that the police conducted an independent investigation before submitting an affidavit for a warrant; rather, the judge's job is to determine if the facts and circumstances stated in the affidavit support a finding of probable cause. *Gates*, 462 U.S. at 238.

### E. The Magistrate Judge did not find a nexus of criminality, and such a finding is unnecessary to establish probable cause.

Defendant Lockwood objects to Magistrate Judge Atkins's finding that there "was a nexus of criminality between Lockwood and the items taken from his truck." (Doc. # 38 at 3). This objection is misinformed, however, as Magistrate Judge Atkins did not make such a finding. (Doc. # 33). Rather, Magistrate Judge Atkins pointed out that Defendant Lockwood's nexus of criminality argument was "without merit" and "immaterial." *Id.* at 5, 7. A court does not have to find such a "nexus of criminality;" rather, "[t]he critical element in a reasonable search is not that the property owner is suspected of a crime but that there is reasonable cause to believe that the 'things' to be searched for and seized are located on the property to which entry is sought." *Zurcher*, 436 U.S. at 547. In other words, "the affidavit must establish a nexus between the place to be searched and the evidence to be sought.'" *Brooks*, 594 F.3d at 492 (quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004)). As such a nexus is present here, *see* Part III.B. *supra*, Defendant Lockwood's objection is meritless. The objection is **overruled**.

### F. Baggies and scales are considered paraphernalia in the Sixth Circuit.

Defendant Lockwood takes issue with Magistrate Judge Atkins's characterization of "baggies and scales" as drug paraphernalia. The Sixth Circuit has consistently found baggies and scales to be included in the broader definition of drug paraphernalia. *See, e.g., United States v. Bell*, 516 F.3d 432, 437, 446 (6th Cir. 2008); *United States v. Mendizabal*, 214 F. App'x 496, 499 (6th Cir. 2006); *United States v. Carter*, 45 F. App'x 339, 342 (6th Cir. 2002). Therefore, Magistrate Judge Atkins's conclusion was correct and Defendant Lockwood's objection is **overruled**.

### G. The Christian opinion has no precedential value.

Defendant Lockwood cites extensively to *Christian I*, a Sixth Circuit case from June 2018, in his Objections to the Motion to Suppress. He specifically objects to the fact that Magistrate Judge Atkins did not rely on this recent case in his R&R. (Doc. # 38 at 4-6) (citing *Christian I*, 893 F.3d 846). However, on September 17, 2018 the Sixth Circuit voted to re-hear *Christian I en banc* and vacated its June 2018 decision. *United States v. Christian* (*Christian II*), 904 F.3d 421, 422 (6th Cir. 2018). As the *Christian I* opinion has been vacated it lacks precedential value, and it would be inappropriate for the Court to rely on it. *Id.*

Even if it were precedential, *Christian I* does not change the standard for determining probable cause, *compare Christian I*, 893 F.3d at 853, *with* cases discussed in Part III.B. *supra*, and is distinguishable in a number of ways from the case before the Court. For example, the facts presented in the *Christian* affidavit are less specific and current than the facts presented in the affidavits in this case. In *Christian*, the affidavit relied on the fact that someone *near* the defendant's residence had drugs to support a warrant to search the house. *Christian I,* 893 F.3d at 854-55. Here, Officer Ison saw Defendant Lockwood exit the black Lincoln, and other officers saw evidence of drug activity in the hotel room during the welfare check. (Doc. # 32-1 at 10). Thus, there is a much stronger link between the evidence presented in the affidavits and the location to be searched. Additionally, much of the evidence presented in the *Christian* affidavit was stale; a similar problem does not exist here. *Christian I*, 893 F.3d at 861-63. As *Christian I* is both distinguishable and has no precedential value, Magistrate Judge Atkins did not

err in failing to cite it in his R&R.  For the reasons stated above, Defendant Lockwood's objection is **overruled**.

H.     **Motions for Joinder**

No objections were raised regarding the R&R's denial of the Motions for Joinder (Docs. # 30 and 31), and therefore the Court will not review and rehash this portion of the R&R pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Crim. P. 59(b).

The Court having reviewed the R&R, and being otherwise sufficiently advised,

**IT IS ORDERED** as follows:

(1)    The Magistrate Judge's Report and Recommendation (Doc. # 33) is **adopted** as the Opinion of the Court;

(2)    Defendant Lockwood's Objections (Doc. # 38) to the R&R are **overruled**;

(3)    Defendant Lockwood's Motion to Suppress (Doc. # 27) is **denied**;

(4)    Defendants Cantrell's and Debarr's Motions for Joinder to Defendant Lockwood's Motion to Suppress (Docs. # 30 and 31) are **denied**; and

(5)    Defendant Debarr's Motion for Joinder to Defendant Lockwood's Objections (Doc. # 40) is **denied as moot**.

This 9th day of November, 2018.



Signed By:
David L. Bunning
United States District Judge

K:\DATA\ORDERS\Ashland Criminal\2018\18-08 Order adopting R&R.docx